**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| STEVEN THOMPSON, CONSERVATOR OF THE ESTATE OF HAKEEM THOMSON<br>Plaintiff | : | NO.: 3: 23-1677 |
| v. | : | |
| HAYDEN BEAUSOLEIL, CONNECTICUT STATE TROOPER; SARAH ANGELO, PLAINFIELD POLICE OFFICER; WILLIAM WOLFBURG, PLAINFIELD DEPUTY CHIEF OF POLICE/ ETHICS OFFICER<br>Defendants | : | December 26, 2023 |

**COMPLAINT**

**INTRODUCTION**

1. This is a Section 1983, Section 1981, and state tort and equal protection action against a state trooper who initiated an unauthorized vehicle chase of a black driver and when he saw that the driver's car had flipped over and the driver was crushed under the car, the trooper deliberately, willfully, and with reckless indifference, fled the scene without alerting any emergency personnel. The action is also against the local police who then conspired to cover up the trooper's unlawful acts.

**JURISDICTION**

2. The jurisdiction of this Court is invoked pursuant to Sections 1981 and 1983 of the Civil Right Act, and pursuant to this Court's supplemental jurisdiction.

**PARTIES**

3. During all times relevant to this complaint, Defendant Hayden Beausoleil was a Connecticut state trooper assigned to Troop D.

4. During all relevant times, Defendant Deputy Chief William Wolfburg, was a member of the Plainfield Police Department and its Professional Standards Officer.

5. During all relevant times, Defendant Sarah Angelo, as a member of the Plainfield Police department and was the investigating police officer assigned to this incident.

6. Plaintiff is the Conservator of the Estate of his son Hakeem Thompson having been so appointed by the Probate Court for the District of Hartford on May 15, 2023. Hakeem Thompson is a Black male and was 25 years old at the time of the subject incident and is hereafter referred to as Plaintiff).

**THE FACTS**

7. As of November 12, 2018, the State of Connecticut mandated that all officers submit a pursuit tracking form for all vehicle pursuits that the officer initiates. This form requires an officer to report where and when a police pursuit was initiated, the reason for the pursuit, the reason the pursuit was terminated and whether or not a crash resulted from the pursuit.

8. As of December 6, 2019, the State of Connecticut mandated a police pursuit policy which "shall serve as the minimum standard for all police pursuits in Connecticut." The State recognized in said policy that "[p]ursuits of fleeing motor

vehicles may present a danger to the lives of the public, officers, and those vehicle occupants involved in the pursuit."

9. Said policy mandates that "A police officer may only engage another vehicle in a pursuit if the officer has reasonable suspicion to believe that the driver or occupant has committed or is attempting to commit a crime of violence, or there are exigent circumstances that warrant the need to apprehend the suspect in a timely manner because of the potential for harm to the public if the apprehension does not occur. The officers must be able to articulate the exigent need to apprehend the driver or occupant because of the potential harm or risk to the public."

10. Said policy also mandates that "[o]ffenses that constitute Infractions, property crimes, (to include stolen motor vehicles), non-violent misdemeanors and non-violent felonies shall not be justification to engage in a pursuit of another vehicle, absent articulable exigent circumstances."

11. Said policy also mandates that "[u]pon engaging in a pursuit, the police officer shall immediately notify communications of the location, direction and speed of the pursuit, the description of the pursued vehicle and the initial purpose of the stop. The police officers shall keep communications updated on the pursuit."

12. Said policy also mandates: "The primary unit [initiating the pursuit] shall notify communications when it is likely that a pursuit will continue into a neighboring police agency's area of law enforcement responsibility or cross the state line. Municipal police agencies and the State Police shall notify each other whenever entering the

other's area of law enforcement responsibility."

13. Said policy also mandates "[w]henever a police officer engages in a pursuit, the police officer shall file a written report on the appropriate form required by his or her agency describing the circumstances.

14. Connecticut requires, pursuant to Conn. Gen. Stat. Ann. § 14-283a, that if an officer initiates a vehicle pursuit and that pursuit enters the jurisdiction of a law enforcement unit other than that of the unit which initiated the pursuit, the law enforcement unit that initiated the pursuit shall immediately notify the law enforcement unit that has jurisdiction over such area of such pursuit.

15. As of November 12, 2020, the State of Connecticut adopted a policy known as the Police Officer Standards and Training Council Use of Force Policy that mandates: "a [police] officer shall render aid and request an emergency medical service (EMS) response as soon as possible for any person who sustains an injury…."

16. On October 12, 2022, Defendant Beausoleil was sitting in his state vehicle watching traffic on Interstate Route 395. He saw Plaintiff drive by and decided to pursue him.

17. Defendant Beausoleil did not notify communications that he was pursuing Plaintiff even though Connecticut law required him to do so.

18. Defendant Beausoleil did not file a pursuit tracking form even though Connecticut law required him to do so.

19. Defendant Beausoleil engaged in a high speed pursuit of Plaintiff even

though Connecticut law forbade him from doing so.

20. Defendant Beausoleil's vehicle camera shows that he pursued Plaintiff off of I-395 and then followed him onto Lathrop Road in Plainfield.

21. Defendant Beausoleil did not notify the Plainfield police department that he was continuing his pursuit of Plaintiff on local roads in Plainfield even though Connecticut law required him to do so.

22. Defendant Beausoleil's vehicle camera also shows that his emergency vehicle lights were activated.

23. A Plainfield Police report signed by Officer Jose Diaz on October 31, 2022, noted that Plaintiff's vehicle and Defendant Beausoleil's vehicle are seen in a security video from the Central Auto Group Dealership located on Lathrop Road in Plainfield. Diaz noted in his report that, as seen on the security video: "Both vehicles continue on Lathrop Road passing the Central Auto Group Dealership…."

24. An Amazon distribution center security camera recorded Plaintiff's vehicle skidding off Lathrop Rd near the entrance to said distribution center.

25. A Plainfield Police case incident report, signed by Defendant Angelo on November 4, 2022, noted that Plaintiff skidded off the road, flipped over multiple times and crashed, and that the time of that crash was shown on said security camera to be 8:25 pm.

26. Said report noted that Defendant Angelo, along with other officers, were dispatched at 9:16 pm to Plaintiff's crash and at 9:25 pm "upon arrival to the scene

significant tire marks were observed in the roadway along with a heavily damaged guardrail at the intersection of Lathrop Road and the Amazon parking lot."

27. Said police report also noted that Plaintiff's crashed car was observed on the side of road and debris from the crash was strewn alongside the road.

28. Said report also noted that 20 feet of guardrail was damaged.

29. Said report also noted that it appeared Plaintiff's car had "skidded sideways" and then "struck the guardrail which caused it to go airborne and flip multiple times" finally landing in a ditch alongside the road.

30. In a Plainfield Police report signed by Jose Diaz on December 5, 2022, he noted that a witness at a gas station on Lathrop Road saw Plaintiff's car being "chased by police" and "after the vehicles passed, he heard 'a loud crash like sound.'"

31. In a Plainfield police report, signed by Sargent Ryan Barile on November 3, 2022, he noted that upon arrival to the scene of Plaintiff's crash, he saw that a significant amount of shattered glass was visible next to the guardrail. He also noted that he "observed miscellaneous car parts scattered, along with a damaged stop sign, near the damaged guardrail." He also noted that he "observed long skid marks that were in the eastbound lane of Lathrop Road which continued up near the damaged guardrail."

32. In a Plainfield police report signed by Brandon Winakor on November 4, 2022, he noted "Upon arrival [to the scene], it appeared there was damage to the guardrail which was an entrance/exit point of the Amazon Distribution Center in

Plainfield, Connecticut. I further observed a vehicle in the ditch off the eastbound side of Lathrop Road."

33. In a Plainfield Police report signed by Kevin Conway on November 1, 2022, he noted "Upon my arrival [to the scene], I observed a vehicle with heavy damage and airbag deployment to the right of the roadway and down an embankment."

34. Photos taken by responding Plainfield Police Officers showed that large pieces of Plaintiff's car were scattered alongside the road, and by the damaged guardrail, and by the flattened stop sign.

35. Said Plainfield police report written by Sargent Barile also noted that Plaintiff was observed belted in his car and unconscious and the car's airbags had deployed.

36. Said Amazon security camera recorded Defendant Beausoleil driving up to where Plaintiff's car had crashed seconds after Plaintiff crashed and Defendant Beausoleil stopped his vehicle at the crash site.

37. Said October 31, 2022 police report, signed by Officer Jose Diaz, noted that the security video from the Central Auto Group Dealership showed that after "both vehicles [passed] the Dealership…," "you can see the first vehicle engage its rear brake lights before going out of camera view. The Police Cruiser is then seen shutting [off] its emergency lights as it also drives out of camera view."

38. Defendant Beausoleil's vehicle camera shows that it was shut off right before Defendant Beausoleil stopped at the crash site.

39. Said Amazon security camera recorded Defendant Beausoleil coming to the crash site, with his emergency lights off and then stopping at the site. The security camera then records Defendant Beausoleil driving off.

40. Defendant Wolfburg noted in a November 16, 2022 case incident report that as Defendant Beausoleil neared the crash site, he deactivated his emergency lights, reduced his speed, and deactivated his dashboard camera and deactivated his body worn camera. At some point after Defendant Beausoleil deactivated all his cameras, Defendant Wolfburg notes that Defendant Beausoleil "states that they had a vehicle take off that they had for 'reckless' on the highway. [Defendant Beausoleil] provided the description of a silver car with Massachusetts plates and stated he was not pursuing due to motor vehicle charges only."

41. Defendant Beausoleil did not notify anyone that the guardrail had been significantly damaged, nor that there was a substantial amount of glass on the roadway, nor that the stop sign at the site had been flattened, nor that pieces of Plaintiff's car were strewn about the road.

42. Defendant Beausoleil did not notify anyone that Plaintiff''s car had flipped over and crashed. Nor did Defendant Beausoleil notify anyone that Plaintiff was unconscious and trapped underneath his car.

43. Said November 4, 2022 police report prepared by Defendant Angelo noted that a passerby called 911 about the crash at 9:16 that night.

44. Said November 4 report noted that a driver noticed glass in the road and

the damaged guardrail and slowed down as a result. He saw that another passerby had called 911. The driver then noticed Plaintiff's vehicle upside down in a ditch. The driver apparently parked and made his way to Plaintiff's car.

45. Said November 4 report noted that this driver tried to assist Plaintiff and told the arriving Plainfield police at 9:25 pm that Plaintiff had severe head trauma and that the car was cold and must have been there for a while.

46. Said November 4 report also noted that this driver stated that Plaintiff had blood coming out of his ears.

47. Said November 4 report noted that Plaintiff was eventually extricated from his car and taken to Bakus Hospital and then airlifted to Hartford Hospital.

48. Plaintiff suffered severe and irreparable head trauma as a result of the crash and receiving no emergency assistance for well over an hour.

49. On Oct 25, 2022, Defendant Angelo noted in her report that the Connecticut State Police called the Plainfield police at 9:45 pm after hearing the Plainfield Police dispatchers, and asked about the vehicle in the crash because it may have been "the one that fled on them earlier in the night."

50. In a report dated November 3, 2022, Defendant Wolfburg noted that on October 31, 2022, he met with his Police Chief, Mario Arriaga, and members of the State Police and the State's Attorney to review the video footage from the Amazon security camera. At the conclusion of that meeting, evidence regarding Defendant Beausoleil's identity and his vehicle, as well as other evidence was requested.

51. In another report dated November 3, 2022, entitled Case Incident Report, Defendant Wolfburg noted that:

> Upon review of two (2) surveillance clips provided the vehicle involved in the motor vehicle crash appeared to be traveling at a high rate of speed being followed by a police cruiser with its emergency lights activated. Both vehicles pass the Amazon parking lot on the west side of the facility and continue in a east bound direction. The vehicle involved in the crash appears in view of the camera located in the parking lot of the east side of the facility at which point it is seen turning sideways, striking the guard rail, and coming to its final resting point. Soon thereafter the police cruiser with its emergency lights now deactivated pulls up along side of the damaged guardrail, stops for a moment, continues forward more out of camera view, stopping again (based on the glow of the brake lights), and continues onward.

52. Defendant Beausoleil's handling of the crash was referred to Deputy Chief William Wolfburg because he was the Professional Standards Officer of the Plainfield Police Department.

53. On January 10, 2023, Defendant Wolfburg concluded his investigation into the possible wrongdoing of Defendant Beausoleil. Defendant Wolfburg concluded that Defendant Beausoleil "did not appear to be aware of the crash."

54. On April 25, 2023, Defendant Wolfburg investigated the criminal history of

Plaintiff. Defendant Wolfburg noted that the investigation was done at the request of Connecticut State's Attorney. Defendant Wolfburg did not find any arrests or convictions of Plaintiff. Defendant Wolfburg did not make any note of any investigation into the criminal history of Defendant Beausoleil.

55. On April 25, 2023, Defendant Angelo prepared a crash report summarizing information she obtained during her investigation into the crash. Defendant Wolfburg signed said report on April 26, 2023. In said report, Defendants Angelo and Wolfburg noted: "Through the collection of surveillance, it was later determined that a police cruiser was attempting to stop [Plaintiff's vehicle]."

56. In July 2023, it was reported that a recent audit of the Connecticut State Police showed that over 25,000 false traffic stops were submitted to the State's racial profiling database. This false reporting grossly overstated the number of traffic stops of white drivers and grossly understated the number of traffic stops of black drivers.

57. As a result of the Defendant Beausoleil's breach of his mandatory duties and his deliberate, willful, and reckless indifference to the injuries of Hakeem Thompson, Hakeem was forced to suffer the following painful, serious, and severe injuries, some or all of which may be permanent in nature:

a. Severe traumatic brain injury with severe multicompartment intracranial hemorrhage involving frontoparietal, thalamus, pons and basal cisterns.

b. Diffuse axonal brain injury.

c. Subarachnoid hematoma.

d. Traumatic epidural hematoma

e. Intraparenchymal hemorrhage of brain.

f. Facial fractures including the occipital condyle fracture.

g. Closed fracture of first cervical vertebra.

h. Closed fracture of fourth cervical vertebra.

i. Closed fracture of fifth cervical vertebra.

j. Closed fracture of sixth cervical vertebra.

k. Closed fracture of left side of mandible.

l. TMJ dislocation.

m. Left ear avulsion.

n. Tongue laceration.

o. Laceration of left forearm.

p. Pulmonary contusion.

q. Pneumothorax.

r. Right distal radius fracture.

s. Acute blood loss anemia.

t. Traumatic rhabdomyolysis.

u. Compromised airway for intubation.

v. Leukocytosis.

w. Superficial venous thrombosis of right upper extremity

x. Laceration of neck

y. Acute traumatic pain.

z. Chronic pain.

aa. Suffering.

bb. Emotional Distress.

cc. Infections

dd. Increase risk of malnutrition.

ee. Increased risk for neurodegeneration to the brain and cervical spine.

And as a result of these injuries, Plaintiff has and will: incur significant medical expenses; be forced to suffer a loss of enjoyment of life's leisure, social, recreational, household and daily activities; and sustain a loss of earning capacity.

**<u>COUNT ONE</u> (Section 1983 as to Defendant Beausoleil)**

1- 57. Paragraphs 1-57 are hereby incorporated by reference as paragraphs 1 through 57 of this Count One, as if they had been set forth in full.

58. Defendant Beausoleil was acting under the color of state law in initiating and continuing the pursuit of Plaintiff and in concluding the pursuit without reporting it after Plaintiff crashed.

59. Defendant Beausoleil acted deliberately and willfully and with reckless indifference to the rights and safety of Plaintiff.

59. Plaintiff was deprived of his right to be treated the same as any other motorist who is driving on the highway and not be subjected to an unreasonable and unlawful pursuit.

60. Plaintiff was deprived of his right to be treated the same as any other motorist who suffers a crash on the roadway and who reasonably expects that emergency assistance will be rendered, and at a minimum, be called for, by a state trooper who is aware of the crash.

61. Plaintiff suffered injuries as a result of Defendant Beausoleil's actions.

**COUNT TWO (Section 1981 as to Defendant Beausoleil)**

1- 58. Paragraphs 1-61 are hereby incorporated by reference as paragraphs 1 through 61 of this Count Two, as if they had been set forth in full.

62. Plaintiff has the right to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens,

63. Defendant Beausoleil's actions deprived him of that benefit.

**COUNT THREE (Section 1983 as to Defendants Angelo and Wolfburg)**

1- 57. Paragraphs 1-57 of Count One are hereby incorporated by reference as paragraphs 1 through 57 of this Count Three, as if they had been set forth in full.

58. Defendants Angelo and Wolfburg were acting under color of state law in conducting and concluding an investigation into Defendant Beausoleil's handling of his pursuit of Plaintiff and his failure to render, and, at a minimum, to call for, emergency aid for Plaintiff.

59. Plaintiff had the right to a fair investigation of what caused his injuries which includes meaningful access to the courts.

60. Defendants Angelo and Wolfburg deprived him of that right by concealing

evidence that Defendant Beausoleil was aware of Plaintiff's crash and concluding that Defendant Beausoleil had not observed that Plaintiff had crashed and therefore, had done nothing wrong by driving off without calling for emergency assistance.

61. Plaintiff has suffered damages as a result of the deprivation of that right.

**COUNT FOUR (Section 1981 as to Defendants Angelo and Wolfburg)**

1- 61. Paragraphs 1-61 of Count Three are hereby incorporated by reference as paragraphs 1 through 61 of this Count Four, as if they had been set forth in full.

62. Plaintiff has the right to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens,

63. Defendants' Angelo and Wolfburg's actions deprived him of that benefit.

64. Plaintiff has suffered damages as a result of the deprivation of that right.

**COUNT FIVE (52-571k as to Defendants Angelo and Wolfburg)**

1- 61. Paragraphs 1-61 of Count Three are hereby incorporated by reference as paragraphs 1 through 61 of this Count Five, as if they had been set forth in full.

62. Under Connecticut's laws, Plaintiff has the right to be treated equally under the law.

63. Connecticut law mandates that no police officer, acting alone or in conspiracy with another, shall deprive any person or class of persons of the equal protection of the laws of this state, or of the equal privileges and immunities under the laws of this state, including, without limitation, the protections, privileges and immunities guaranteed under article first of the Constitution of the state.

64. Plaintiff had the right to a fair investigation of what caused his injuries.

65. Defendants Angelo and Wolfburg deprived him of that right by concealing evidence that Defendant Beausoleil was aware of Plaintiff's crash and concluding that Defendant Beausoleil had done nothing wrong.

66. Plaintiff has suffered damages as a result of the deprivation of that right.

**COUNT SIX (Negligence as to Defendant Beausoleil violating his ministerial duties)**

1.- 57. Paragraphs 1-57 of Count One are hereby incorporated by reference as paragraphs 1 through 57 of this Count Five, as if they had been set forth in full.

58. Defendant Beausoleil had a mandatory duty to not continue his pursuit of Plaintiff when there was no risk of violence to others.

59. Defendant Beausoleil had a mandatory duty to call in his pursuit of Plaintiff so others would be aware of it and could render assistance if needed.

60. Defendant Beausoleil had a mandatory duty to alert the Plainfield Police Department that he was pursuing Plaintiff on local roads so that they could monitor the situation and render assistance if necessary.

61. Defendant Beausoleil had a mandatory duty to render, and, at a minimum, call for, emergency assistance after Plaintiff crashed.

62. These mandatory duties specified above constitute ministerial functions for which immunity does not apply.

63. Plaintiff suffered severe injuries as a result of Defendant Beausoleil violating his mandatory duties.

**<u>COUNT SEVEN (Negligence as to Defendant Beausoleil violating his discretionary duties)</u>**

1- 61. Paragraphs 1-61 of Count Five are hereby incorporated by reference as paragraphs 1 through 61 of this Count Six, as if they had been set forth in full.

62. Plaintiff was an identifiable person when Defendant Beausoleil decided to continue a high speed chase of Plaintiff.

63. Plaintiff was in imminent harm when Defendant Beausoleil continued that high speed chase on local roads in Plainfield.

64. Plaintiff was in imminent harm when Defendant Beausoleil decided to not render, and, at a minimum, not even call for, any emergency assistance after Plaintiff crashed.

65. Plaintiff suffered injuries as a result of Defendant Beausoleil's actions.

WHEREFORE, Plaintiff claims:

1. Compensatory Damages in an amount to be determined by the trier of fact;

2. An injunction permanently enjoining the defendants, and all persons in active concert or participation with them, from engaging in any practice which discriminates on account of race;

3. Punitive damages;

4. Attorney's fees and the costs; and

5. Such other and further relief as this Court deems necessary and proper.

THE PLAINTIFF,

By: /S/ Victoria de Toledo
Victoria de Toledo
Stewart Casper
Casper & de Toledo LLC
1458 Bedford Street
Stamford, CT 06905
Tel. No.: (203) 325-8600
Fed. Bar No.: CT 06741
vdetoledo@cadetlaw.com