**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| STEVEN THOMPSON, conservator of the Estate of Hakeem Thompson, *Plaintiff*, | ) | 3:23-CV-1677 (OAW) |
| v. | ) | |
| HAYDEN BEAUSOLEIL, et al, *Defendants*. | ) | |

**RULING ON MOTIONS TO DISMISS**

**THIS ACTION** is before the court upon Defendant Hayden Beausoleil's Motion to Dismiss ("Beausoleil MTD"), *see* ECF No. 50, and the Motion to Dismiss filed by Defendants Sarah Angelo and William Wolfburg ("Wolfburg MTD," and together with the Beausoleil MTD, "Motions"), *see* ECF No. 51. The court has reviewed the Motions, Plaintiff's opposition thereto, ECF No. 52, Defendants' replies in support of the Motions, ECF Nos. 53 and 54, and the record in this case and is thoroughly advised in the premises. For the reasons discussed herein, the Wolfburg MTD is **GRANTED,** but the Beausoleil MTD is **DENIED.**

## I. BACKGROUND[1]

Plaintiff brings this action as conservator of the estate of his son, Hakeem Thompson ("Hakeem"),[2] who was severely injured as a result of the events giving rise to this action.

---

[1] All factual allegations are taken from the amended complaint, docketed at ECF No. 48, unless otherwise noted, and are considered to be true for purposes of this ruling.
[2] As is done by Plaintiff at paragraphs 6 and 74 of the Amended Complaint, the court refers to Hakeem by his first name solely to differentiate him from Plaintiff, who has the same last name.

On October 12, 2022, Connecticut State Trooper Hayden Beausoleil was on duty in his official police vehicle, monitoring traffic on Interstate 395. Hakeem, a black man who was 25 years old at the time, drove past where Beausoleil was parked, and Beausoleil pulled out behind him, attempting to pull him over. The record presently does not indicate what (if anything) Hakeem was doing that might have warranted being stopped, but Plaintiff alleges that the attempt was racially motivated. When Hakeem did not stop, Beausoleil pursued him in what developed into a high-speed chase. Plaintiff contends that Beausoleil's pursuit violated Connecticut state law and police policies.

Hakeem exited the interstate and Beasoleil followed him onto Lathrop Road in Plainfield. When Hakeem attempted to make a sharp right turn, he lost control of his vehicle, which careened off the road, crashing through a stop sign and a guard rail, and flipping over several times before coming to rest in a ditch next to the road. A witness at a gas station on Lathrop Road reported that he saw a car being chased by police and then after they had passed, he heard a loud crash.

According to an incident report signed by Wolfburg (Plainfield Deputy Chief and Professional Standards Officer), Beausoleil deactivated his vehicle and body-worn cameras before he reached the crash site. Security footage from a nearby building shows that the crash occurred at approximately 8:30 p.m., and that Beausoleil slowed down and turned off his emergency lights as he neared the site, then rolled slowly toward it and briefly stopped before slowly proceeding out of the frame. The glare from his brake lights becomes visible from off-screen (suggesting that he stopped again, near the crash), but then disappears, indicating that Beausoleil drove away. Plaintiff contends that Beausoleil saw the crash, but fled the scene to hide his own misconduct.

Beausoleil did not report the crash (or even the pursuit itself, as policy requires). A passerby happened upon the scene and called 911 approximately 45 minutes later. Plainfield police arrived at about 9:30. Police reports note skid marks on the road, parts of Hakeem's vehicle strewn about, a flattened stop sign, and a broken guardrail. Hakeem was unconscious in the front seat, with his seatbelt still fastened. The car's airbags had deployed. A passerby who had stopped to provide aid told officers that Hakeem had severe head trauma and that his vehicle was cold (a fact confirmed by police reports), indicating that it had crashed some time before the arrival of Plainfield police. Hakeem had agonal respirations and blood was coming out of his ears.

Wolfburg investigated the incident by request of the State's Attorney.[3] His November 2022 report indicated that Beausoleil "state[d] that they had a vehicle take off that they had for 'reckless' on the highway. [Beausoleil] provided the description of a silver car with Massachusetts plates and stated he was not pursuing due to motor vehicle charges only." It is unclear whether Beausoleil said this on the night of the crash or at some later point during Wolfburg's investigation. Angelo (a responding Plainfield officer) noted that at 9:45 p.m. on the night of the crash, state troopers called Plainfield police (presumably upon hearing a Plainfield dispatch), and inquired, wondering whether the car may have fled from them earlier that night.[4] It remains unclear who from the state police called Plainfield police, though it also is unclear who (within the state police) besides

[3] Defendants assert the investigation was to ascertain whether a crime had been committed.

[4] The Beausoleil MTD questions whether any pursuit took place at all, though witness and video evidence confirm a pursuit, complete with emergency lights. Regardless, the court must accept the facts as Plaintiff alleges them, and so this ruling proceeds upon the premises that (1) the pursuit did happen, and (2) Beausoleil lied about not pursuing Hakeem.

Beausoleil would have known about the crash and/or the pursuit (which Beausoleil denies to have taken place), but also would have failed to report them.

A November 2022 Wolfburg report suggests that two video clips were reviewed and that they combined to show a high-speed police chase (with the cruiser's emergency lights activated), followed by the crash, and then the cruiser pulling beside the damaged guardrail at the crash site (but with its emergency lights deactivated). The cruiser stopped within the camera's view, and then again outside of it. After that, it left. Nevertheless, in January 2023, Wolfburg completed his investigation and concluded that Beausoleil "did not appear to be aware of the crash."[5]

In April 2023, Wolfburg investigated *Hakeem's* criminal history, apparently at the request of the Connecticut State's Attorney (though the reason therefor is not clear).[6] Nevertheless, he found no arrests or convictions.

Hakeem suffered myriad, extensive injuries from the crash and from the delayed response thereto, including severe traumatic brain injury and several spinal fractures. He was in a minimally conscious state for more than year, and now is quadriplegic and unable to speak.

## II. <u>LEGAL STANDARD</u>

To withstand a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

[5] The basis for this conclusion is not entirely clear, and the report itself was not docketed by either party.
[6] Wolfburg does not mention investigating Beausoleil's criminal history nor any statistical data suggesting that traffic stops initiated by those at his state police barracks might have been racially discriminatory.

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a probability requirement, but the pleading must show, not merely allege, that the pleader is entitled to relief. *Id.* Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id.* "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp*., 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). However, when reviewing a 12(b)(6) motion to dismiss, the court must draw all reasonable inferences in the non-movant's favor. *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).

## III. DISCUSSION

Plaintiff brings several claims against each defendant. Against Beausoleil, he alleges two claims under 42 U.S.C. § 1983:[7] a violation of the Equal Protection Clause of the Fourteenth Amendment (Count One); and "deliberate indifference" (Count Two). He also asserts two tort claims under Connecticut state law; Counts Five and Six assert claims against Beausoleil for his allegedly reckless conduct in engaging Hakeem in a

[7] The amended complaint says that jurisdiction also is proper under 42 U.S.C. § 1981, but there are no claims stated pursuant to that statute. There is a single paragraph that references Hakeem's right under § 1981 (which extends the benefits of contracting to all citizens regardless of race) to "equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." ECF No. 48 ¶ 81. This paragraph hints at association with Fourth Amendment and equal protection claims, but it makes neither clearly, and there is no apparent connection with § 1981. The court concludes that the amended complaint pleads no § 1981 claim.

high-speed pursuit and failing to call for medical assistance.[8] Against Wolfburg and Angelo, Plaintiff asserts two equal protection claims, one under the Fourteenth Amendment (Count Three), and one under Connecticut law (Count Four). In the Motions, the defendants argue that all claims against them must be dismissed. The court turns first to the claims against Wolfburg and Angelo.

### A. <u>Wolfburg and Angelo</u>

Plaintiff accuses Wolfburg and Angelo of treating Hakeem differently because he is black by (1) failing to fairly investigate the incident,[9] (2) conspiring to conceal evidence that Beausoleil was aware of Plaintiff's crash, and (3) concluding that Beausoleil had committed no misconduct. Wolfburg and Angelo argue that any equal protection claim against them must be dismissed because Plaintiff has failed to adduce facts sufficient to state such a claim, and even if that were not the case, they would be entitled both to qualified immunity and to governmental immunity. The court agrees that Plaintiff has failed to state any constitutional claim against either Wolfburg or Angelo.

As to Angelo, there are no facts asserted in the amended complaint that she had anything to do with Wolfburg's investigation. In fact, it does not appear that she had any involvement with the accident itself beyond writing up reports as a responding officer. And nowhere is it alleged that Angelo made any false reports as to what happened the night of October 12, 2022. In fact, Plaintiff relies upon her reports to support his factual allegations. She apparently had no further role in Hakeem's case or any further

---

[8] In Counts Seven and Eight, Plaintiff also asserted negligence claims against Beausoleil, but he concedes that per statute, those allegations must be brought first to the state's Claims Commissioner, *see* Conn. Gen. Stat. § 4-147, and therefore these two Counts must be dismissed.

[9] Plaintiff concedes that Hakeem does not have any right to an investigation into the crash, but clarifies that, having decided to investigate the crash, Wolfburg and Angelo are obligated under the Constitution and Connecticut law to perform that investigation in the same manner as they would for a white driver. This, Plaintiff alleges, they failed to do.

collaboration with Wolfburg, even by Plaintiff's account. Accordingly, as to Angelo, Count Three is dismissed in its entirety.

Next, there are no facts asserted in the amended complaint from which one could infer a conspiracy to deprive Hakeem of any constitutional rights, or that any evidence was concealed during the course of the investigation. Plaintiff asserts in conclusory manner that Wolfburg and Angelo conspired to conceal evidence showing Beausoleil's misconduct, but there is no identification of what that evidence was or how they concealed it. Accordingly, Count Three must be dismissed insofar as it is predicated upon any conspiracy or evidentiary impropriety.

Plaintiff alleges that Wolfburg was the officer responsible for investigating Beausoleil's conduct on the night in question (and that the investigation was clouded by Wolfburg's racial bias), and also that Wolfburg wrongfully concluded Beausoleil was unaware of the accident (again, allegedly resulting from Wolfburg's racial bias), but these facts are insufficient to state an equal protection claim against him. Unlike claims brought under Title II of the Americans with Disabilities Act (ADA), which do not require a showing of discriminatory animus or intent, *see Sanchez v. Butricks*, No. 22-2923, 2024 WL 2890742 (2d Cir. Jun. 10, 2024) (summary order) (citing *Tardif v. City of New York*, 991 F.3d 394, 404 (2d Cir. 2021), here, "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Even if Wolfburg knew of Beausoleil's alleged wrongdoing and absolved him anyway, Plaintiff has adduced no facts to suggest discriminatory animus motivated the action. Plaintiff suggests Wolfburg's conclusion itself is proof of racial discrimination, but "allegations that are conclusory . . .

are not entitled to the assumption of truth." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). The allegation may not support itself. *Id.* at 162 (disregarding as conclusory an allegation of the "very assertion that plaintiffs must prove."). The court therefore must conclude that Plaintiff has failed to plead this essential element.

Thus, the court concludes that Count Three fails to state its equal protection claim against either Wolfburg or Angelo, and therefore must be dismissed entirely.

Wolfburg and Angelo next argue that Count Four must be dismissed because the claim asserted therein may only be brought in state court. *See* Conn. Gen. Stat. § 52-571k (providing for a civil action "in the Superior Court."). The court finds this argument persuasive, and given the Plaintiff does not respond to it, the court also concludes that the point has been conceded. These are reasons enough for dismissal.

Even if that were not the case, though, the court still would exercise its discretion to decline to hear this claim. Count Four proceeds under Connecticut state law, and while its claims are so related to Plaintiff's federal claims that supplemental jurisdiction might be exercised, *see* 28 U.S.C. § 1367(a) (providing that federal courts "shall" have authority to hear such closely-related claims although there otherwise is no federal jurisdiction), the court finds that the claim presents a novel and complex question of state law, such that it should decline supplemental jurisdiction. *Id.* § 1367(c)(1).

Generally, it is recognized that an individual has no private cause of action under the equal protection provision codified at Article First, Section 20 of Connecticut's state constitution. *Sakon v. Connecticut*, No. 3:23-CV-602 (AWT), 2024 WL 4041305, at *10 (D. Conn. Sept. 4, 2024) (collecting state and federal authority for this proposition). However, Plaintiff's claim proceeds under a relatively new law (§ 52-571k of the General

Statutes of Connecticut) which specifically permits an individual to file suit for violations of Article First committed by police officers. However, the court has not found, and Plaintiff has not produced, any published discussion of this statute by state courts. Therefore, the elements of this claim are unclear, and determining whether Plaintiff properly has pled them would require this federal court to define the contours of a novel state constitutional entitlement. The court declines to do so.[10] *See Rahim v. Martin*, No. 3:23CV298 (MPS), 2023 WL 4745536, at *8 (D. Conn. July 25, 2023) (declining to exercise supplemental jurisdiction over state constitutional claims where those claims "present new contexts for a cause of action under the Connecticut Constitution," indicating "a novel and complex issue of state law . . . ."); *Santana v. Quiros*, No. 3:21-CV-376 (SVN), 2022 WL 16706959, at *12 (D. Conn. Nov. 4, 2022) (declining to exercise supplemental jurisdiction over novel state constitutional claims).

Accordingly, the Wolfburg MTD is granted in full.

**B. <u>Beausoleil</u>**

Plaintiff asserts two claims against Beausoleil under Section 1983. Count One asserts a violation of Hakeem's Fourteenth Amendment equal protection rights. Specifically, he claims that Beausoleil treated Hakeem differently because of his race when Beausoleil (1) attempted to stop Hakeem; (2) engaged in a high-speed pursuit of Hakeem; (3) failed to report the pursuit, (4) failed to report the crash, and (5) failed to follow police procedure. Count Two asserts a "deliberate indifference" claim under the Fourteenth Amendment, which the court construes as a substantive due process claim.

[10] The court also notes that this endeavor likely would require reliance upon federal case law as persuasive authority, which, in turn, likely would result in dismissal, anyway, for reasons discussed supra.

Plaintiff asserts that Beausoleil deprived Hakeem of constitutional rights when, knowing that Hakeem had crashed his vehicle, he failed to call for medical assistance.

Beausoleil argues that all claims against him must be dismissed because there are insufficient facts pled to support the allegation that his treatment of Hakeem was racially motivated, and there was no violation of any of Hakeem's constitutional rights because Hakeem never was seized. Moreover, Beausoleil asserts a qualified immunity defense. With respect to the former argument, Plaintiff responds that the claims are supported by several reports discussing racial bias within the Connecticut State Police and thus are pled well enough to survive dismissal pending additional discovery. And with respect to the latter argument, Plaintiff counters that chasing Hakeem is similar enough to a seizure as to implicate constitutional rights, and that Beausoleil was the one who put Hakeem in danger in the first instance.

***i. Equal Protection***

To state an equal protection claim based upon racial discrimination, a plaintiff must show evidence of discriminatory intent. *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 438 (2d Cir. 2009) ("Proof that discriminatory intent was a motivating factor is required to show a violation of the Equal Protection Clause."). It is not enough to state that an individual is of a protected class and was denied equal protection under the law. An equal protection plaintiff must adduce evidence sufficient to plausibly show that the denial was motivated *by invidious discriminatory purpose*. *Arlington Heights,* 429 U.S. at 265–66.

Beausoleil argues that Plaintiff has failed to satisfy this pleading requirement. Plaintiff's only evidence of discriminatory animus comes from academic reports that

Beausoleil's troop stopped non-white drivers more often than white drivers. Beausoleil argues this disparate impact evidence cannot be the basis for an equal protection claim, and that it does not show Beausoleil disproportionately stopped non-white drivers. Plaintiff asserts that the reports are sufficient to support the claim at this early point in litigation, before substantial discovery has been completed.

It is true that "official action will not be held unconstitutional solely because it results in a racially disproportionate impact." *Id.* at 264–65. But "[t]he impact of the official action [and] whether it 'bears more heavily on one race than another,' may provide an important starting point" into the intent inquiry. *Id.* at 266 (quoting *Washington v. Davis*, 426 U.S. 229, 242). "Sometimes a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action," rendering the inquiry "easy." *Id.*; *see also Floyd v. City of New York,* 959 F. Supp. 2d 540, 583–88 (S.D.N.Y. 2013) (using statistical data to analyze a Fourteenth Amendment claim). It is unclear from the studies whether the disparity in stops could be explained on non-racial grounds. Thus, the studies alone are insufficient to carry the pleading burden. However, "[t]he specific sequence of events leading up to the challenged [conduct] also may shed some light on the [actor's] purposes." *Id.* at 267. "Departures from the normal procedural sequence also might afford evidence that improper purposes are playing a role." *Id.* Substantive departures also may be relevant to this inquiry, particularly if an action is inconsistent with the professed goal of an actor. *Id.* Looking at the entirety of the circumstances alleged in the amended complaint, the court finds that there is enough from which one reasonably could infer that Beausoleil's conduct was racially motivated, even with the incident having occurred at nighttime.

First, there is the question of what might have warranted stopping Hakeem. Beausoleil notes that Plaintiff does not deny Hakeem was violating traffic laws, which Beausoleil equates to a concession that he was justified in attempting to stop him. Ironically, though, Beausoleil did not timely report any vehicular misconduct or that he would be engaging Hakeem in pursuit. And the only record evidence thus far as to Hakeem's conduct (and perhaps, the only evidence that ever could be discovered given Hakeem's current nonverbal state)[11] is Beausoleil's own statement that he saw a car driving recklessly on the highway, but he did not pursue it because the driver committed only motor vehicle violations. Accepting Plaintiff's version of events, Beausoleil was untruthful about declining pursuit, which was at worst due to moving violations. From this alleged misrepresentation, one might infer that Hakeem was not driving recklessly at all. And Beausoleil's obvious understanding that moving violations do not warrant a high-speed pursuit substantively shows that his conduct was irregular. The court finds that Beausoleil's conduct and the events preceding the accident could support an inference of discriminatory intent.

Further, Plaintiff clearly alleges Beausoleil failed to observe proper procedure in a number of respects: first, in engaging in a high-speed pursuit for what the record indicates was at worst motor vehicle violations (the impropriety of which it appears Beausoleil was aware at the time of the incident, since he denied giving chase at all); second, in failing to report the high-speed pursuit; third, in failing to alert the Plainfield police that he was engaged in high-speed pursuit within their jurisdiction; and fourth, in failing to call for

[11] It appears that at some point the state police represented that police video footage of the incident showed Hakeem's driving, but that they later conceded being "in error" on that point. ECF No. 57 at 2–3. Thus, Hakeem's driving behaviors might not be able to be conclusively established short of trial.

emergency medical services after seeing Hakeem's crash. These anomalies further support a reasonable inference of discriminatory intent. The reports, the uncertainty of the events, and Beausoleil's failure to observe usual police procedure coupled with his false statements are sufficient to show, at this early state of litigation, that Beausoleil's treatment of Hakeem was motivated by racial animus. Thus, the court will allow Count One to proceed for further development.

To be clear, though, the court will allow the equal protection claim to proceed only as to Beausoleil's attempt to stop Hakeem, his pursuit of Hakeem, and his failure to call emergency assistance for Hakeem. Hakeem was not the object of Beausoleil's failure to make requisite reports or follow police procedure, so while those allegations are relevant to the discussion of discriminatory animus, they cannot form independent bases for the equal protection claim.

ii. ***<u>Substantive Due Process</u>***

Turning to the substantive due process claim, the court must summarily reject Plaintiff's argument that the pursuit was "similar" enough to a seizure to trigger custodial duties of care. It is well-settled that a chase is not a seizure. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) ("[A] police pursuit in attempting to seize a person does not amount to a 'seizure' within the meaning of the Fourth Amendment.") (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). And it is also well-settled that there is no Fourteenth Amendment violation where a police officer "caus[es] death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender." *Id.* at 836. Thus, Beausoleil's *pursuit* of Hakeem, though it ended in tragedy, cannot state a substantive due process claim.

However, Beausoleil's argument also fails. The *Lewis* court did not hold that a police officer's conduct during a pursuit of a suspect could *never* give rise to a substantive due process claim.[12] Instead, the Supreme Court of the United States held that a Fourteenth Amendment violation may occur where an officer's pursuit shows "a purpose to cause harm unrelated to the legitimate object of arrest . . . ." *Id.* Here, Plaintiff has pled sufficient facts to satisfy this standard.

Plaintiff asserts that while pursuing Hakeem, Beausoleil realized that Hakeem had suffered a serious accident, was immobile, and likely was gravely injured, but, recognizing that he should not have pursued him at all, he decided to end his pursuit short of a seizure and leave Hakeem helpless and in apparent distress to hide his own misconduct. These facts, if proved at trial, easily could shock the conscience of a reasonable jury. This is especially so in the absence of a quickly-developing situation requiring a split-second decision.[13] Beausoleil allegedly had ample time to react: he allegedly approached the crash, saw it, stopped, continued on for a short distance, stopped again, and only then left the scene. Thus, taking Plaintiff's allegations as true, one could conclude Beausoleil

[12] The court acknowledges that in the Fourth Amendment context, attempted stops do not give rise to constitutional claims, and pursuits are not seizures. But this claim addresses the Fourteenth Amendment and racial discrimination, not probable cause. The inquiry asks whether Hakeem was treated differently by a state actor on the basis of his race, regardless of whether that treatment resulted in a seizure. *Aikman v. Cnty. of Westchester*, 491 F. Supp. 2d 374, 383 (S.D.N.Y. 2007), on reconsideration in part, 691 F. Supp. 2d 496 (S.D.N.Y. 2010) (allowing a Fourteenth Amendment claim to proceed past dismissal where Plaintiff claimed to have been stopped by police due to his race, and that his vehicle was searched on the same improper basis). Thus, Beausoleil's argument that Hakeem never was seized is inapposite, and it will not be discussed further here.

[13] The Court in *Lewis* explained that the deliberate indifference standard is appropriate where an official has the "luxury" of "time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations," because in those cases where "extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking." *Lewis*, 523 U.S. at 853. The court posits that this reasoning could support the conclusion that the deliberate indifference standard is the appropriate one in this circumstance, where Beausoleil allegedly had such an "extended opportunity" to get aid for Hakeem, but "fail[ed] even to care." However, the court need not address that question further, since it is clear that Plaintiff can satisfy the heightened "purpose to cause harm" standard.

had time to assess the situation, and deliberately chose to leave Hakeem possibly to die rather than risk the discovery of his own misconduct.

As such, the court finds sufficient facts to plausibly state the claim in Count Two.

iii. ***Qualified Immunity***

Beausoleil argues that even if Plaintiff has stated plausible claims in Counts One and Two, they still must be dismissed because he is entitled to qualified immunity. "Qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Stephenson v. Doe*, 332 F.3d 68, 76 (2d Cir. 2003) (quoting *McCardle v. Haddad*, 131 F.3d 43, 50 (2d Cir.1997)). Courts employ a two-part inquiry when determining whether a litigant is entitled to qualified immunity: first, the court considers whether the facts alleged, taken in the light most favorable to the injured party, state a violation of a constitutional right; and second, the court considers whether the official's actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)) (internal quotation marks omitted).

The first part of the inquiry has been answered *supra*: the court already has concluded that the facts alleged in the complaint, viewed in the light most favorable to Plaintiff, do demonstrate that Beausoleil violated Hakeem's constitutional rights. The question, then, is whether Beausoleil's conduct violated "clearly established" rights.

"For a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Pal v. Canepari*, No. 23-730, 2024

WL 4341360, at *1 (2d Cir. Sept. 30, 2024) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Thus, the inquiry "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Colvin v. Keen*, 900 F.3d 63, 75 (2d Cir. 2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 244 (2009)) (internal quotation marks omitted). Courts must consider "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Soukaneh v. Andrzejewski*, 112 F.4th 107, 122 (2d Cir. 2024) (quoting *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 60 (2d Cir. 2014)).

There can be no doubt that qualified immunity must be denied as to the equal protection claim. The right not to be subjected to state action because of one's race is the main thrust of the Fourteenth Amendment in the first instance, as the Supreme Court repeatedly has stated. *See, e.g., Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 206 (2023) (noting that the main purpose of the Equal Protection Clause was "do[ing] away with all governmentally imposed discrimination based on race." (quoting *Palmore v. Sidoti*, 466 U.S. 429, 432 (1984)) (alteration in original); *see also Washington v. Davis*, 426 U.S. 229, 239 (1976) ("The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race."); *McLaughlin v. Florida*, 379 U.S. 184, 192 (1964) ("[T]he historical fact [is] that the central purpose of the Fourteenth Amendment was to eliminate racial discrimination emanating from official

sources in the States"). Traffic enforcement specifically has been the subject of several precedential rulings. *See Whren v. United States*, 517 U.S. 806, 813 (1996) (stating in a case alleging an unconstitutional traffic stop that "the Constitution prohibits selective enforcement of the law based on considerations such as race," and noting that "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment."); *United States v. Swindle*, 407 F.3d 562, 569–70 (2d Cir. 2005) ("[R]ace, when considered by itself and sometimes even in tandem with other factors, does not generate reasonable suspicion for a stop."). Thus, the court easily concludes that, assuming Plaintiff's alleged facts are true, a reasonable officer would have known that taking official action on the basis of Hakeem's protected characteristic was unlawful.

The court arrives at the same conclusion with respect to the substantive due process claim. The right to life and liberty cannot be argued, and applicable case law long has defined the procedural protections necessary to safeguard these rights. *See, e.g., Woods v. Nierstheimer,* 328 U.S. 211, 216 (1946) (discussing writs of habeas corpus as the proper means for "challenging violations of fundamental rights to life and liberty guaranteed by the United States Constitution."); *Tharpe v. Ford*, 139 S. Ct. 911, 913 (2019) ("When [the plaintiff] went on trial for his crimes, the Constitution promised him the 'fundamental protection of life and liberty against race or color prejudice.'") (quoting *McCleskey v. Kemp*, 481 U.S. 279, 310 (1987)); *U. S. ex rel. Williams v. Fay*, 323 F.2d 65, 69 (2d Cir. 1963) ("A confession obtained by these methods cannot be introduced against an accused consistently with the constitutional guarantee that his life and liberty may not be taken from him without due process of law."); *Barrett v. United States*, 798

F.2d 565, 574 (2d Cir. 1986) (stating that federal officials "were not authorized to violate the Constitution by arbitrarily depriving [the plaintiff] of life and liberty."). Thus, a reasonable officer certainly would have known that an individual cannot be deprived of life or liberty absent due process. And even more specifically, a reasonable officer undoubtedly would understand that preexisting law forbids him from (without penological reason) causing harm to someone he pursues. The Supreme Court of the United States has held as much. *Lewis*, 523 U.S. at 836 (holding that in a high-speed chase, "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation.").

To be clear, the fact that Hakeem crashed his vehicle and likely was injured in that crash cannot provide a basis for this claim. There are no facts alleged indicating that Beausoleil intended harm to come to Hakeem when he initiated the pursuit. However, there are sufficient factual allegations indicating that Beausoleil's later conduct showed such intent. According to Plaintiff, while in pursuit of Hakeem, Beausoleil saw that Hakeem had crashed, saw that the severity of the crash, and then made the decision to terminate the pursuit, without calling any aid for Hakeem, all for the purpose of hiding his misconduct and his failure to follow proper procedure. If Plaintiff convinces a jury of these facts, that certainly could show that Beausoleil intended to harm Hakeem by delaying medical attention as to any injuries he may have sustained during the crash, which delay could have exacerbated those injuries and seriously lowered his chance of recovery, even to nil. That Beausoleil may have intended to serve his own interests cannot be divorced from his intention to cause Hakeem harm. The latter was an inevitable and attendant

consequence of the former, and therefore Beausoleil's actions cannot be attributed to the former and not the latter.

Accordingly, the court denies qualified immunity as to Count Two as well.

iv. ***Ministerial/Discretionary Duties***

Plaintiff also asserts two state law claims against Beausoleil: common law recklessness in breaching his ministerial duties and discretionary duties.[14] Specifically, Plaintiff asserts that Beausoleil acted recklessly when he failed to follow state statutes and police policies proscribing the use of high-speed pursuits by law enforcement where the object thereof presents no apparent risk of violence.

The court presumes that these claims follow from a Connecticut statute extending governmental immunity to state actors sued individually for injuries "not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." Conn. Gen Stat. § 4-165(a). Plaintiff specifically has alleged that Beausoleil's conduct *was* "wanton, reckless, or malicious" such that this immunity would be inapplicable, but Beausoleil argues that these allegations are conclusory, and that none of the conduct alleged reaches the threshold of wantonness, recklessness, or malice.

The court disagrees. The Supreme Court of Connecticut has held that "wanton, reckless, or malicious" conduct is that which "indicates a reckless disregard of the just rights or safety of others or of the consequences of [an] action," and which "tends to take

[14] "Discretionary duties are performed wholly for the direct benefit of the public and are supervisory in nature; ministerial duties are those performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action." *Simsbury-Avon Pres. Soc'y, LLC v. Town of Simsbury*, No. X01CV044001892S, 2006 WL 437544, at *3 (Conn. Super. Ct. Jan. 26, 2006). This distinction is relevant to municipal liability claims, but not individual liability claims. Conn. Gen Stat. § 52-557n (proscribing state liability for the discretionary actions of officials). Accordingly, the court will discuss these claims together.

on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent . . . ." *Shay v. Rossi*, 253 Conn. 134, 181 (2000), overruled on other grounds by *Miller v. Egan*, 265 Conn. 301 (2003) (quoting *Elliott v. Waterbury*, 245 Conn. 385, 415 (1998)). Those facts from which a jury reasonably could infer discriminatory animus also adequately allege reckless, wanton, or malicious conduct within the meaning of the statute.[15] According to Plaintiff, Beausoleil saw the crash and knew that Hakeem was in danger of succumbing to serious injuries, such that he needed medical attention as soon as possible, but that Beausoleil displayed a total disregard for Hakeem's safety by leaving the scene of the crash without rendering aid or calling for help. A reasonable jury could find this conduct "highly unreasonable."

Accordingly, the court finds that Plaintiff's allegations are not wholly conclusory, and that Counts Seven and Eight are pleaded well enough to survive dismissal.

## IV. CONCLUSION

Accordingly, it is thereupon **ORDERED AND ADJUDGED** as follows:

1. The Motion to Dismiss filed by Defendants Wolfburg and Angelo, at ECF No. 51, is **GRANTED.**
    **a.** The Clerk of Court is asked, respectfully, to please terminate Defendants Wolfburg and Angelo from this action.

[15] Beausoleil argues that *Shay* deals with official capacity claims and not individual capacity claims, but *Shay* clearly deals with both, standing for the proposition that facts alleging self-serving actions are adequate to state official and individual capacity claims. *Shay,* Conn. 134 at 182 (2000) ("The same facts and allegations that led us to conclude that the defendants' conduct was in excess of their statutory authority, lead us to conclude that the defendants could be found to have acted wantonly, recklessly or maliciously.").

**b.** Plaintiff may amend the complaint as to Count Three only on or before **March 10, 2025.**

2. The Motion to Dismiss filed by Defendant Beausoleil, at ECF No. 50, is **DENIED.**

3. Given the dismissal of Defendants Wolfburg and Angelo, Plaintiff's most recent Motion to Compel, ECF No. 79, which seeks information about these defendants' past investigations, hereby is **DENIED.**

4. The parties hereby are referred to a United States Magistrate Judge for a settlement conference. The Clerk of Court respectfully is asked to please assign a magistrate judge for such purpose.

**IT IS SO ORDERED** in Hartford, Connecticut, this 7th day of February, 2025.

*/s/*
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE